UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**MONA F. JOHNSON**                                              **CIVIL ACTION**

**VERSUS**                                                        **NO: 05-2638-MVL-SS**

**JO ANNE BARNHART, COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**

## REPORT AND RECOMMENDATION

The plaintiff, Mona F. Johnson ("Johnson"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3). Rec. doc. 1.

## PROCEDURAL HISTORY

On December 19, 2000, Johnson submitted a claim for SSI. R. 124-25. She reported that she had sickle cell anemia with pain crises that prevented her from working since August 13, 2000. R.42. She also filed a claim for Childhood Disability Benefits under Title II of the Act, 42 U.S.C. § 423. R. 126. Her claims were denied. R. 22-25. On November 1, 2002, a hearing was held before the Administrative Law Judge ("ALJ"). R. 137-159. The ALJ inquired if the record should

be left open for any additional information.  Johnson's counsel replied in the negative stating that it was a claim for a closed period of disability, and therefore there was no need for the records of Johnson's hospitalization in June 2002.  R. 138.  At the request of her attorney, the ALJ treated the claim as a closed period of disability from May 1, 2000 to June 1, 2001.  R. 16, 142 and 144-45. On January 17, 2003, the ALJ denied Johnson's claim.  R. 12-20.  On April 29, 2005, the Appeals Council denied her request for review.  R. 4-6.

Johnson filed a complaint on June 27, 2005.  Rec. doc. 1.  The Commissioner answered on November 29, 2005.  Rec. doc. 5.  The matter was placed on the call docket and a report and recommendation was issued that the case be dismissed without prejudice for failure to prosecute. Rec. docs. 8 and 9.  Johnson objected and demonstrated mistakes made in managing the court's e-mail notifications concerning deadlines and call docket notices.  The District Judge sustained the objection.  Rec. doc. 11.  Johnson filed a motion for summary judgment.  Rec. doc. 12.  The Commissioner filed a cross-motion for summary judgment on June 8, 2006 and the matter was submitted.  Rec. doc. 16.

## STATEMENT OF ISSUES ON APPEAL

Johnson's request for judicial review raises the issue of whether the ALJ erred in failing to find that she was disabled at the third step.

## THE ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

1. The claimant meets the non-disability requirements for Childhood Disability Benefits set forth in Section 202(d) of the Social Security Act (with the exceptions noted in 20 CFR § 404.352(b)(2)).

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's sickle cell disease with frequent pain crises is a severe impairment, based upon the requirements in the Regulations and Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985) (20 CFR §§ 404.1521 and 416.921).

4. This medically determinable impairment does not meet the duration requirement of the Act.

5. The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision.

R. 19.

## ANALYSIS

a. Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and

whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Newton v. Apfel, 209 F.3d at 453; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step inquiry

---

[1] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

b.   Testimony at Hearing.

Johnson was 24 at the time of the hearing. R. 139. She was not married. R. 139. She had four children. R. 67. She had completed the eleventh grade and she had a G.E.D. R. 139. She could read and write and do simple math. R. 139-40. She was able to drive. R. 149.

She testified that she lost her cashier job at the Burlington Coat Factory in May of 2000. R. 145-46. She left the job because she was getting sick all of the time. R. 146. In about August 2000 she became very sick. R. 141. She had pain crises related to the sickle cell anemia. R. 146. At the time of the hearing, they occurred about once a month. R. 146. The milder ones lasted a few days. During these episodes she stayed home, took medication and drank fluids. R. 146-47. For more

severe episodes she went to the hospital. R. 147. She was hospitalized twice in 2002. R. 147-48. She believed she was hospitalized fifteen times since May 2000. R. 148. She was hospitalized for a week in June 2002. R. 151. She reported side effects, like a hangover, from taking Percocet and Vicodin. R. 149. She received blood transfusions when she was hospitalized. R. 150.

From July 2000 through September 2002 she worked as a parking lot attendant. R. 140. She stopped working because she missed a lot of days and was let go. R. 140-41. She had not worked since September 2002. R. 140-41. She stopped because she got sick. R. 140.

When she was in a pain crisis, she was able to take care of her house and her personal needs including bathing and dressing herself. 149-50.

The vocational expert described Johnson's prior work as sedentarily unskilled. R. 157. If Johnson could demonstrate reliability in her employment during a pain crisis, she could sustain employment. R. 157. If she was unable to do so, she could not sustain employment. R. 157.

c.      Medical Evidence.

On August 10, 2000, Johnson was admitted to Tulane University Hospital & Clinic ("Tulane") for four nights with complaints of knee pain from sickle cell disease. R. 115-20. On admission, she reported that her last pain crisis was in January 2000. R. 117. An ultrasound revealed she was pregnant. Laboratory work was done, R. 117, and a chest x-ray did not reveal any pulmonary disease. R. 119-20. The pain crisis was resolved and she was discharged. R. 118.

On October 3, 2000, Johnson was hospitalized for a pain crisis. R. 113–14.

On October 20, 2000, Johnson was admitted to Tulane for two nights. She was 31 weeks pregnant with her fourth child. She was diagnosed with sickle cell disease and a pain crisis. While in the hospital, she was placed on IV fluids, Demerol and oxygen. She began to feel better. At

discharge she was stable and her pain was controlled with oral medication. She was told to take Demerol for pain. R. 79-81 and 111-12.

On November 2, 2000, Johnson was admitted to Tulane for eleven nights. She complained of pain in her legs and back. She reported a pain crisis each month since the fourth month of her pregnancy. The history indicated three blood transfusions: (1) when she was three years old and first diagnosed with sickle cell; (2) in 1996 for a C-Section; and (3) in 1998 for a C-Section. After eight days in the hospital she was given a fourth blood transfusion. On November 13, 2000, her pain was resolved and she was discharged in good condition. R. 82-84 and 109-110.

On November 20, 2000, Johnson was admitted to Tulane for eighteen nights. She reported a pain crisis that began in her right knee. She also reported contractions. The contractions were stopped. After the pain crisis was resolved on December 4, 2004, a C-Section was performed on December 5, 2000. She was given a blood transfusion on December 7, 2000. Her condition was stable at discharge. Motrin, vitamins, iron, Demerol, Micronor and folic acid were prescribed. R. 85-88 and 106-08.

In March 2001, Johnson went to the Tulane emergency room for a pain crisis. R. 91.

On May 27, 2001, Johnson was seen by Dr. Miljana Mandich, an internist. She reported that she had sickle cell anemia and she often had pain crises, especially during pregnancies. She had no complaints at the time of Dr. Mandich's examination. He diagnosed her with: (1) sickle cell anemia by history; (2) obesity (5'1" and 234 pounds); (3) post four C-sections and tubal ligation with four children between four years and five months old; and (4) a history of periodic pain crises and possibly five blood transfusions over her life. R. 64-70.

On June 6, 2001, Johnson was admitted to Tulane for three nights for a sickle cell pain crisis.

She was discharged in stable condition. R. 91-97 and 104-05.

On July 4, 2001, Johnson visited the Tulane emergency room with a complaint of a sore throat. She was released with instructions to rest, increase her fluids and gargle. R. 102-03.

On January 4, 2002, Johnson visited the Tulane emergency room with a sickle cell pain crisis. She was not using a narcotic analgesic. She was treated with Morphine. R. 99-100.

d.     Plaintiff's Appeal.

Issue. Did the ALJ err in failing to find that Johnson was disabled at the third step?

At the third step the ALJ is required to make two determinations: (1) has the claimant's impairment lasted or is it expected to last for a continuous period of twelve months; and (2) is the impairment included in a list of serious impairments in the regulations or is it medically equivalent to a listed impairment. If the ALJ answers "yes" to both, then the claimant is considered disabled without consideration of vocational evidence. 20 C.F.R. §§ 404.1520(d), 416.920(d). Johnson sought disability for a closed period from May 1, 2000 through June 1, 2001. The ALJ found that her impairment did not meet the duration of a requirement and cited the lack of treatment records prior to August 2000. R. 19. Having made this determination, the ALJ was not required to consider whether Johnson satisfied the listing requirements.

Johnson argues that the duration requirement was met. She urges that the record for her hospitalization on August 10, 2000 contains her report of a pain crisis in January 2000. R. 117. She contends that the absence of laboratory tests in August 2000 indicates that Tulane confirmed the condition on a prior visit. The discharge summary, however, states that laboratory work was done at the time of her admission and reports the results. R. 117. Tulane's patient history notes for August 11, 2000 and its discharge summary indicate that she reported that her last pain crisis was

in January 2000. R. 115 and 117. However, there is no evidence that this pain crisis required medical treatment.

It undisputed that there are no medical records submitted for May 1, 2000 through August 9, 2000; a period of the claimed disability. The ALJ concluded that Johnson did not meet the duration requirement for the closed period. She contends that a different conclusion should be drawn from her report of a pain crisis in January 2000 and the fact that she stopped working as a cashier at Burlington in May 2000. However, her disability report, dated November 9, 2000, states she became unable to work on August 13, 2000. R. 42 and 50. The same report indicates she worked as a cashier in a café in August 2000. R. 43.

There is substantial evidence to support the ALJ's conclusion. The conclusion urged by Johnson may be permissible, but it is not the function of this court to re-weigh the evidence or substitute its judgment for the Commissioner's. Carey v. Apfel, 230 F.3d at 135. The ALJ was not required to consider whether Johnson met the requirements of Listing 7.05 for sickle cell disease, because she did not meet the durational requirement. There is no need for the court to consider it.[2]

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 16) be GRANTED and Johnson's motion for summary judgment (Rec. doc. 12) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and

---

[2] Even if Johnson did meet the listing requirement, her application for benefits would fail under the ALJ's determination that she did not meet the durational requirement.

recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 24th day of July, 2006.

                                                                     **SALLY SHUSHAN**
                                                 **United States Magistrate Judge**